# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

WILLIAM K. DIXON,

    Plaintiff,

v.

DAYENA M. CORCORAN, *Commissioner*,
J. NINES, *Asst. Warden (Acting Warden)*,
C. GILPIN, *Correctional Officer*,
SHOEMAKER, *Officer*,
TAMMY, *Nurse*, and
McALPIM, *ARP Coordinator*,

    Defendants.[1]

Civil Action No. TDC-18-3149

## MEMORANDUM OPINION

Plaintiff William K. Dixon, an inmate currently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed a civil action against Defendants Dayena Corcoran, Commissioner of Correction, Maryland Department of Public Safety & Correctional Services; NBCI Acting Warden J. Nines; NBCI Correctional Officer Cody Gilpin; NBCI Correctional Officer Erik Shoemaker; NBCI Administrative Remedy Procedure ("ARP") Coordinator George McAlpine (collectively, the "Correctional Defendants"), and "Nurse Tammy," now identified as Nurse Tammy Buser. Compl. 1, ECF No. 1. Construed liberally, the Complaint asserts a violation of the Eighth Amendment to the United States Constitution arising from the alleged failure to provide adequate medical care, as well as claims of negligence and a

---

[1] The Clerk shall amend the docket to reflect the full and correct names of Defendants Cody Gilpin, Erik Shoemaker, Tammy Buser, and George McAlpine.

violation of the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996).

Pending before the Court is the Correctional Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Correctional Defendants' Motion, construed as a Motion for Summary Judgment, will be GRANTED. Defendant Buser, an employee of the private corporate medical provider at NBCI, was not served with the Complaint, and Dixon's claims against her will be DISMISSED pursuant to 28 U.S.C. § 1915A.

## BACKGROUND

On March 29, 2017, Dixon was placed in disciplinary segregation in Housing Unit 1 ("HU1") at NBCI. HU1 has its own medical clinic. For security reasons, if an inmate from HU1 needs to be seen by medical staff, he is escorted by a correctional officer, who remains present during any medical consultation. HU1 inmates are not left alone with a medical provider.

Inmates placed in disciplinary segregation at NBCI are not allowed to have any containers, such as a shampoo or lotion bottle, that would allow an inmate to store urine or feces to be used in an attack on either another inmate or a correctional officer. Instead, inmates may purchase small plastic sleeves containing shampoo, lotion, and other such products.

While he was housed in HU1, Dixon suffered itching, dry skin, and rashes as a result of what he has described as "filthy living conditions." Compl. ¶ 10. On April 13, 2017, after Dixon filled out a sick call slip, CO Shoemaker escorted Dixon to see Nurse Buser and remained in the room during the medical consultation. According to Dixon, CO Gilpin entered the room and "demanded" that Dixon "be sent back to his housing area." *Id.* ¶ 12. Dixon states that he was not

2

given anything to treat his skin condition despite being "charge[d]" for the medical visit. *Id.* According to his medical records, Dixon's medical visit was to address back pain, not skin issues. On April 18, 2017, Dixon submitted another sick call request, complaining of hearing voices. On May 1, 2017, he submitted a sick call request complaining of back pain and skin irritation. The medical staff issued him a prescription for Lamisil to address his skin issues.

On April 27, 2017, Dixon filed an administrative remedy procedure grievance ("ARP") regarding the April 13, 2017 medical visit, claiming that Shoemaker and Gilpin violated his right to privacy and denied him medical treatment. On May 5, 2017, Acting Warden Nines ("the Warden") dismissed the ARP. In reaching this result, the Warden stated, "[a]n investigation revealed that Officer Gilpin frequently monitors inmate movement and passes within [HU1] but has never interrupted a medical pass unless asked to by the medical provider." ARP No. NCI-1030-17 at 1, Compl. Ex. 2, ECF No. 1-2.

On May 16, 2017, Dixon appealed the Warden's decision to Commissioner Corcoran, who dismissed the appeal on June 30, 2017, stating, "Your ARP Appeal has been investigated and is hereby dismissed. The warden fully addressed your complaint. No further action will be taken through the ARP process." ARP App. Resp. at 2-3, Compl. Ex. 3, ECF No. 1-3. Dixon appealed this determination to the Inmate Grievance Office, which dismissed the grievance administratively.

In his Complaint to this Court, Dixon alleges that Defendants violated his constitutional rights by exhibiting deliberate indifference in denying him adequate medical care and not providing him with treatment for his skin condition, and by failing to properly investigate his allegations during the ARP process, such as by reviewing video footage or interviewing more witnesses. He also asserts that by staying with him during his medical visit, Shoemaker and Gilpin violated his privacy rights, which Dixon has clarified in his briefing to refer to his rights under

3

HIPAA. Finally, he asserts that Defendants' failure to treat his medical condition and to investigate his claims constituted negligence.

## DISCUSSION

In their Motion, the Correctional Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. Among other arguments, they contend that: (1) under the Eleventh Amendment, they are immune from suit in their official capacity; (2) Dixon has not alleged any personal involvement by Corcoran, Nines, and McAlpine in the alleged violation; (3) the alleged failure to fully investigate the ARP does not violate Dixon's constitutional rights; and (4) Dixon has failed to show that the Correctional Defendants were deliberately indifferent to a serious medical need or that the conditions at NBCI amount to cruel and unusual punishment.

### I. Legal Standards

The Correctional Defendants filed their Motion as a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of the Correctional Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Dixon has not filed an affidavit or declaration under Rule 56(d) and instead has included his own exhibits to be considered by the Court. Therefore, on the issues for which consideration of exhibits is required, the Court will construe the Motion as seeking summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light

most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Eleventh Amendment

The Correctional Defendants assert that they are immune from claims against them in their official capacity based on the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Although Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a) (LexisNexis 2014), it has not waived

its immunity under the Eleventh Amendment to a suit of this kind in federal court. Accordingly, the Correctional Defendants are immune from suit for actions taken in their official capacity. Any such claims will be dismissed.

### III. HIPAA

Dixon claims that Shoemaker and Gilpin violated his rights under "the privacy act," by remaining in the room during Dixon's medical examination. Compl. at 4-5. In his briefs, Dixon clarifies that he is asserting a claim under HIPAA.

HIPAA establishes standards and regulations to protect the privacy and accuracy of medical records, and it prohibits the wrongful disclosure of unique health identifiers or individually identifiable health information. 42 U.S.C. § 1320d-6 (2018). Dixon has not explained how the presence of a correctional officer during a prisoner's medical appointment for security reasons violates HIPAA. Regardless, the statute does not provide a private right of action for any citizen. *See, e.g., Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); *Miller v. Nichols*, 586 F.3d 53, 59-60 (1st Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) (per curiam); *Tarpley v. Pierce*, No. GLR-17-3267, 2018 WL 4616058, at *10 (D. Md. Sept. 26, 2018) (holding that because there is no private right of action under HIPAA, there was no viable HIPAA claim based on the presence of a correctional officer during a medical appointment). Therefore, Dixon's HIPAA claim necessarily fails as a matter of law and will be dismissed.

## IV. Eighth Amendment

Dixon also asserts violations of the Eighth Amendment for deliberate indifference to his health and safety based on the failure to treat his skin condition, the "filthy living conditions" in HU1, and the policy of not permitting bottles of lotion there.

The Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere

8

negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

The record does not support Dixon's claim that the Correctional Defendants acted with deliberate indifference to his skin condition. First, Dixon has not alleged sufficient facts to support the conclusion that his skin condition presented an objectively serious medical need within the meaning of the Eighth Amendment. *See Iko*, 535 F.3d at 241. Moreover, even assuming that, contrary to the medical records, Dixon told the nurse during his April 13, 2017 medical visit about his skin condition but was not able to receive any treatment because of Gilpin's interference, where on May 1, 2017 he received a prescription for Lamisil to treat the condition, and there is no allegation that he required further attention after that point, the evidence does not support a finding of deliberate indifference to a serious medical need.

As for Dixon's Eighth Amendment claim based on the conditions of confinement in HU1, conditions of confinement that "involve wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* In order to establish the imposition of cruel and unusual punishment

in conditions of confinement, a prisoner must prove two elements: that "the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

The objective prong of a conditions of confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993). To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (*quoting Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Here, Dixon has not alleged facts that would support a finding that whatever the specific conditions in HU1, he suffered a sufficiently serious injury based on the conditions in HU1 to

10

establish an Eighth Amendment conditions-of-confinement claim. Where only skin lotion bottles, not skin lotion itself, are banned for security reasons, there is no deprivation serious enough to constitute cruel and unusual punishment. Finally, given the stated security concerns, Dixon has not shown that the subjective component of an Eighth Amendment claim, that Defendants acted with deliberate indifference to inmate health, can be satisfied.

Accordingly, the Court concludes that there is no genuine issue of material fact on Dixon's Eighth Amendment claims. The Court will grant the Motion as to these claims.

**V.     Due Process**

Where Dixon also alleges that the Correctional Defendants failed to properly investigate his ARP, the Court construes that claim as an alleged violation of due process rights under the Fourteenth Amendment. Such a claim fails because even if the Correctional Defendants did not follow the requirements of the ARP process, violations of state laws or regulations do not establish a basis for a federal procedural due process claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 392 (4th Cir. 1990) (citation omitted). Likewise, the failure to follow prison directives or regulations does not, in and of itself, establish a violation of due process. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers*).

Moreover, even where a state has created internal prison procedures, the procedural protections of the Due Process Clause apply only to actions that implicate a protected liberty interest, such as those that result in the loss of good time credits, *see Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993), or otherwise lengthen the amount of time an inmate must serve, *see Montanye v. Haymes*, 427 U.S. 236, 242 (1976), as well as those that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515

U.S. 472, 477-78, 483-84 (1995). Dixon's allegations that the Correctional Defendants hindered his access to the ARP process and failed to take appropriate investigative steps do not meet these standards. Therefore, the Court will grant summary judgment to the Correctional Defendants on this claim.

**VI. Negligence**

Finally, Dixon alleges negligence by the Correctional Defendants in relation to the treatment of his skin condition and the investigation of his ARP. Where all of Dixon's federal claims will be dismissed, the Court will decline to exercise supplemental jurisdiction over these state law claims and thus will dismiss them without prejudice. *See* 28 U.S.C. § 1367(c)(3) (2018); *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

**VII. Unserved Defendant**

Defendant Nurse Tammy Buser has not been served with the Complaint. Because Dixon is an inmate who is proceeding *in forma pauperis*, the Court reviews the allegations against this unserved Defendant to assess whether Dixon has stated a plausible claim for relief against her. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). For the reasons discussed above relating to the Correctional Defendants, Dixon has also failed to allege facts to support a claim of deliberate indifference to a serious medical need under the relevant standard as to Buser. *See supra* part IV. Because Dixon has failed to state a plausible claim for relief against Buser, the claims against her will be dismissed. *See* 28 U.S.C. § 1915A(b).

## CONCLUSION

For the foregoing reasons, the Correctional Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment will be granted, and the claims against Defendant Tammy Buser will be dismissed. A separate Order shall issue.

Date: February 12, 2020



THEODORE D. CHUANG
United States District Judge